# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUNCAN MORGEN-WESTRICK<br>Plaintiff,<br>v.<br>PENNSYLVANIA STATE UNIVERSITY<br>Defendant. | CIVIL ACTION NO. 20-3335 |

## MEMORANDUM OPINION

Rufe, J.                                                                                                              August 25, 2022

Plaintiff Duncan Morgen-Westrick filed this lawsuit after receiving a grade of B- in a graduate software engineering class at Pennsylvania State University. Penn State has moved for summary judgment, which will be granted for the reasons explained below.

## I.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[3] To evaluate a motion for summary judgment, it is necessary to "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[4] It is improper for a court "to weigh the evidence or make credibility

---

[1] Fed. R. Civ. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

determinations" as "these tasks are left to the fact-finder."[5] The non-moving party must support its opposition to the motion by pointing to evidence in the record.[6] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7]

## II. FACTS

The relevant facts are generally undisputed. In the Spring of 2016, Plaintiff enrolled as an online graduate student in the software engineering program at Penn State.[8] Plaintiff requested, and was granted, an accommodation for a learning disability that permitted him double time to take exams and quizzes.[9] In the Spring 2019 semester, Plaintiff enrolled in Applied Human-Computer Interaction ("SWENG 826") taught by Professor Sally Sue Richmond.[10] The syllabus for SWENG 826 explained that grades would be based on individual and group assignments. Three assignments were due each week. Assignments could be turned in up to one week late if the student contacted Professor Richmond at least 24 hours before the due date and Professor Robinson granted permission.[11] SWENG 826 did not have exams or quizzes.

During the fifth week of the semester, Plaintiff's group assignment was to review another group's work. Because that group was not ready, Plaintiff's group assignment was pushed out to the next week. As a result, in the sixth week of the semester, Plaintiff had to complete both the delayed group assignment from the fifth week and the three sixth-week

---

[5] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).
[6] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).
[7] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).
[8] Stipulated Statement of Facts ("SOF") [Doc. No. 20-1] at ¶¶ 2-3.
[9] Def.'s Ex. B [Doc. No. 22-3] at PSU_00004, ECF page 3.
[10] SOF [Doc. No. 20-1] at ¶¶ 5–6.
[11] Def.'s Ex. E [Doc. No. 22-6] at PSU_00017, ECF page 6.

assignments.[12] At 8:42 p.m. on the evening the assignments were due, Plaintiff sent Professor Richmond an email stating that he had sustained a light concussion several days earlier and would be unable to submit the assignments on time.[13] Professor Richmond responded by email stating "[u]ntil you recover fully, please spend your time on the team assignment. I'll extend the due dates for the week 6 and week 7 individual assignments for you. Please keep me updated, and I hope you get back to your usual self quickly."[14] Plaintiff did not follow up and did not submit the missed assignments before the semester ended two weeks later.[15]

Plaintiff received zeros for the uncompleted assignments and a grade of C for SWENG 826.[16] Plaintiff challenged this grade through Penn State's grade adjudication process. As a first step, Plaintiff was directed to communicate with Professor Richmond, and he requested the opportunity to submit the missed assignments for grading. Professor Richmond agreed to allow him eight days to do so.[17] After Plaintiff failed to submit the assignments, Professor Richmond notified him that the grade would stand.[18]

Plaintiff then filed a formal grade adjudication petition, which the Chancellor reviewed.[19] The Chancellor determined that it was Plaintiff's responsibility to inform Professor Richmond of the additional time needed for the assignments and that he failed to do so.[20] "Nevertheless, in the spirit of reaching a compromise," the Chancellor asked the instructor to remove the zero for the

---

[12] Def.'s Ex. G [Doc. No. 22-8] at DMW_00061–62, ECF pages 2–3.

[13] Def.'s Ex. H [Doc. No. 22-9] at PSU_00034, ECF page 2; SOF [Doc. No. 20-1] ¶ 10.

[14] Def.'s Ex. H [Doc. No. 22-9] at PSU_00034, ECF page 2.

[15] Def.'s Ex. C, Dep. Tr. Morgen-Westrick [Doc. No. 22-4] at 56.

[16] SOF [Doc. No. 20-1] ¶ 13.

[17] Def.'s Ex. J [Doc. No. 22-11] at PSU_00036, ECF page 3.

[18] Def.'s Ex. J [Doc. No. 22-11] at PSU_00035, ECF page 2.

[19] Def.'s Ex. K [Doc. No. 22-12] at PSU_00042-45, ECF pages 2–5.

[20] Def.'s Ex. L [Doc. No. 22-13] at PSU_00046, ECF page 2.

assignment that was moved from the fifth week to the sixth week, which increased Plaintiff's grade from 70.42% to 79.60%, or from a C to a C+.[21] Plaintiff appealed this determination to a Grade Adjudication Petition Committee on a written record. The Committee concluded that the Chancellor's recommendations were "fair and correct" but rounded up the grade of 79.60%, for a final determination of a B- grade for SWENG 826.[22]

Plaintiff then filed a complaint of disability discrimination with Penn State's Affirmative Action and Diversity Education Office, contending that the delayed assignment created an excessive workload that had not been part of the syllabus, which had prevented Plaintiff from seeking an accommodation.[23] The Affirmative Action Office, after conducting interviews with Plaintiff and Professor Richmond and reviewing documentation, concluded that Plaintiff had no accommodation for flexible dates, that Plaintiff had twice received deadline extensions, and that Plaintiff chose "not to engage in a timely discussion" with the professor by telephone about his concerns with completing the assignments.[24] Therefore, the internal complaint found no evidence that Professor Richmond failed to provide reasonable accommodations or discriminated against Plaintiff based on a disability.[25]

Plaintiff took one additional course at Penn State in the Summer of 2019. After receiving a D in that class, he did not enroll in any further classes.[26]

---

[21] Def.'s Ex. L [Doc. No. 22-13] at PSU_00046–47, ECF pages 2–3. The zeros for the other uncompleted assignments were not changed.

[22] Def.'s Ex. M [Doc. No. 22-14] at PSU_00050, ECF page 2; Def.'s Ex. A at PSU_00002, ECF page 3.

[23] Def.'s Ex. N [Doc. No. 22-15] at PSU_00051–53, ECF pages 2–4.

[24] Def.'s Ex. O [Doc. No. 22-16] at PSU_00056, ECF page 4.

[25] Def.'s Ex. O [Doc. No. 22-16] at PSU_00056, ECF page 4.

[26] Def.'s Ex. A [Doc. No. 22-2] at PSU_00002, ECF page 3.

## III. DISCUSSION

### A. Americans with Disabilities Act Claim

Plaintiff alleged in the Complaint that Penn State failed to accommodate his learning disability in violation of the Americans with Disabilities Act ("ADA"). [27] To show a violation of the ADA based on a failure to accommodate, Plaintiff must prove that: (1) he is disabled; (2) he made reasonable requests for accommodation; and (3) Penn State denied the requests.[28] As Defendant argues, Plaintiff has not attempted to establish a violation of the ADA in response to the Motion for Summary Judgment. The record shows that the only disability accommodation Plaintiff requested was for extra time on quizzes and exams, which Penn State granted. To the extent it could be argued that Plaintiff sought accommodation after suffering a concussion, Professor Richmond twice granted Plaintiff additional time to complete the assignments, and Plaintiff has not produced evidence of disability discrimination.[29]

---

[27] In relevant part, the statute provides that:
> General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

[28] *See Rawdin v. American Board of Pediatrics*, 985 F. Supp. 2d 636, 647–48 (E.D. Pa. 2013).

[29] Plaintiff's Complaint alleged a claim for promissory estoppel "arising out of the requirements and promises of Penn State to accommodate under the ADA" and Penn State's "internal ADA policies." Compl. [Doc. No. 1] ¶ 13. To the extent that this could constitute a cause of action, it fails for the same reasons as the ADA claim. To the extent that it could be construed as a breach of contract claim, Pennsylvania courts have "declined to construe the student handbook of a public university as a contract between the public university and the student." *Cohn v. Pennsylvania State Univ.*, No. CV 19-2857, 2020 WL 2770684, at *7 (E.D. Pa. May 28, 2020) (quoting *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) and citing *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013); *Bradshaw v. Pennsylvania State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011); *Reardon v. Allegheny College*, 926 A.2d 477, 481 (Pa. Super. Ct. 2007).

B.     **Procedural Due Process**

Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."[30] The type of notice and the type of hearing the Due Process Clause requires depends on the context.[31] If "a student is discharged for academic reasons, all that is required to satisfy procedural due process is 'an informal faculty evaluation with the student.'"[32] Here, Plaintiff has not been discharged; he instead challenges the grade that he received in an individual class. Plaintiff argues that because of his grade, his employer would not reimburse him for tuition, which required him to stop taking classes. However, this action cannot be attributed to the university, and the consequences of an action do not render the action itself a deprivation of life, liberty, or property.

Even if a single class grade constitutes a protectible interest, Plaintiff was able to challenge the grade with Professor Richmond, with the Chancellor, and with the Committee. As a result of this process, his grade was raised from a C to a B-. Plaintiff argues that he was entitled to a hearing with the "opportunity to question Professor Richmond about the circumstances involving her assignments or [P]laintiff's grade."[33] Plaintiff cites no case law for this proposition; an "opportunity for hearing" means an opportunity to be heard, not an opportunity for a formal hearing. The record shows that Plaintiff was able to submit any material in writing, and he also had the opportunity to set up a phone appointment with the Chancellor.[34] As a matter of law, Plaintiff received all the process he was due.

---

[30] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted).

[31] *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

[32] *Knowles v. Temple Univ.*, No. 21-3131, 2022 WL 3037258, at * 3 (3d Cir. Aug. 2, 2022) (quoting *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986)).

[33] Pl.'s Mem. L. Opp. Summ. J. [Doc. No. 21] at 4.

[34] Def.'s Ex. J [Doc. No. 22-11] at PSU_00038, ECF page 5.

### C. Substantive Due Process[35]

The Supreme Court and the Court of Appeals have assumed, without deciding, that continued enrollment in a graduate program is a fundamental property right protected by the Due Process Clause.[36] For a substantive due process claim to survive summary judgment, "there must be a genuine issue of material fact that [the university's] decision constituted "such a substantial departure from accepted academic norms as to demonstrate that [it] did not actually exercise professional judgment."[37] In other words, the decision must be "beyond the pale of reasoned academic decision-making or otherwise the result of an arbitrary and deliberate abuse of authority."[38]

Here, again, Plaintiff was not dismissed from any academic program. Moreover, Plaintiff has not produced evidence from which a reasonable factfinder could conclude that Penn State's decision was an abuse of authority. Plaintiff argues that the fact that the grade was changed from a C to a B- gives rise to an inference of arbitrary action in the first instance. This is not supported by the record. Plaintiff received zero marks on assignments that were not submitted for grading. The appeal process gave Plaintiff the benefit of the doubt by removing the zero for one assignment, and gave him the benefit of the doubt again by rounding up the revised grade. This is not evidence of arbitrariness.

---

[35] The Complaint alleges the breach of Pennsylvania's common law of due process, which applies to disciplinary actions of, among other entities, private universities. *See Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 542 (E. D. Pa. 2019). The Court will apply the substantive due process standard to Penn State, a public university.

[36] *Keles v. Bender*, No. 21-1497, 2022 WL 840311, at *4 (3d Cir. Mar. 18, 2022) (citations omitted).

[37] *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)).

[38] *Elansari v. United States*, 823 F. App'x 107, 112 (3d Cir. 2020) (internal quotation marks and citation omitted).

## IV.  CONCLUSION

It is not the role of the federal courts to second guess academic determinations in the absence of evidence to support a statutory or constitutional violation. Defendant's Motion for Summary Judgment will be granted. An order will be entered.